**Zed DANIELS, Plaintiff,**

v.

**Richard L. KIESER, Defendant.**

**No. 77 C 3409.**

United States District Court,
N. D. Illinois, E. D.

March 22, 1978.

Jerome J. Roberts, Terrence Hutton, Jenner & Block, Chicago, Ill., for plaintiff.

Gregory C. Jones, Acting U. S. Atty., N. D. Illinois, Nancy K. Needles, Asst. U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

This is an action for false arrest and imprisonment brought by plaintiff, a witness in a federal criminal trial in the United States District Court for the Northern District of Indiana, against an Assistant United States Attorney of that district. Plaintiff alleges that his arrest and imprisonment came as a result of defendant's "knowingly false and malicious statements" made to United States District Judge Robert Grant which resulted in the issuance of a material witness arrest warrant by Judge Grant. Defendant, through the United States Attorney of this District, has moved to dismiss on the ground of prosecutorial immunity. For the reasons herein stated, we deny the motion to dismiss at this time.

## I.

The facts, as alleged by plaintiff, indicate that plaintiff, a citizen of Illinois, was to be a prosecution witness in a Dyer Act case. Defendant was the Assistant United States Attorney assigned as the prosecutor in the case. Plaintiff had been advised that the case had been continued to November 4, 1976, and that he would be subpoenaed. On November 3, 1976, plaintiff, who had not yet received any subpoena, left his office to depart on a long-scheduled business trip with his wife and certain business associates and clients. Later that afternoon, a Deputy United States Marshal in Chicago telephoned plaintiff's office to advise that a subpoena was supposed to have been served on plaintiff, but had not been because it had been misplaced in the office of the United States Marshal in Chicago. The marshal was advised that plaintiff was already en route to O'Hare Airport and was given the details of plaintiff's trip, including departure and return times. Plaintiff was not served on November 3, 1976, and no effort was apparently made to contact him at the airport or on his trip.

The marshal telephoned the defendant in South Bend that afternoon and explained that the failure to serve plaintiff was due to an error in the United States Marshal's office in Chicago. Plaintiff alleges, however, that defendant refused to accept the explanation.

On Thursday, November 4, 1976, neither plaintiff nor the defendant in the criminal case were present in court in South Bend. Plaintiff alleges that Kieser then made the following false statements to Judge Robert Grant: "that Mr. Daniels was evading service of the subpoena; that he had previously done so; that he had left town after being notified by the United States Marshal's Office of the subpoena; that Mr. Daniels' attorney in Chicago, a Mr. Thomas Shanahan, had told Mr. Kieser on Tuesday, November 2, 1976, Mr. Daniels would be in South Bend, and on Wednesday, that Mr. Daniels had 'doublecrossed' him; and that Mr. Kieser had no idea of when Mr. Daniels would return."

Judge Grant, without requiring a formal affidavit or sworn testimony, then ordered a material witness warrant for Mr. Daniels to issue and set bond at $10,000.00 as Mr. Kieser requested. Plaintiff alleges that the warrant was invalid since it was not supported by sworn testimony as required by 18 U.S.C. § 3149.

On November 9, 1976, two Deputy United States Marshals met plaintiff's return flight at O'Hare Airport and arrested him in the presence of his companions. Plaintiff was interrogated, handcuffed, taken from the airport to the federal lockup where he was fingerprinted, photographed, disrobed, searched, subjected to a complete body search and physically examined. Plaintiff was then imprisoned in the maximum security section.

At a hearing on November 10, 1976, before United States Magistrate James T. Balog, plaintiff was released.

Plaintiff brings this action under federal law and under Illinois state law pursuant to diversity jurisdiction. Defendant has moved to dismiss on the authority of the

prosecutorial immunity authorized by *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

## II.

■ Plaintiff's counsel has not attempted to dispute the proposition that *Imbler* is here applicable.[1] Instead, counsel asks us, in twenty-two pages of impassioned rhetoric in which the voices of John Adams, James Otis, William Pitt, John Wilkes, and the NEW YORKER are invoked, to find that *Imbler v. Pachtman* was wrongly decided and, in effect, to overrule it. This is obviously beyond our power.

■ On the other hand, *Imbler* does not purport to grant immunity to prosecutors for everything they may do in conjunction with a case or in the purported exercise of their official authority. The Supreme Court defined the prosecutorial immunity as covering activities "intimately associated with the judicial phase of the criminal process." 424 U.S. at 430, 96 S.Ct. at 995. Specifically, it held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages . . .. 424 U.S. at 431, 96 S.Ct. at 995, and left open the question of a prosecutor's possible liability for action taken in an investigative or administrative capacity. We are not at all certain that a request for a bench warrant at a status hearing prior to the commencement of trial is part of the "judicial phase of the criminal process" and we are inclined to believe that it is simply a ministerial act within the prosecutor's administrative functions.[2] Whether the defendant's conduct here falls within the ambit of *Imbler* is not entirely clear and we are, therefore, disposed to deny the preliminary motion to dismiss.

An equally, if not more, relevant question, however, is whether the absolute immunity of *Imbler* is applicable when the plaintiff is not an allegedly wronged criminal defendant, but is instead a witness, and, in fact, as in the instant situation, a witness for the prosecution. In balancing the policies between a qualified and an absolute immunity, the Court was concerned with the prosecutor's duty

> to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate.

We think there are significant differences between the likelihood that an angry de-

---

**1.** Although the issue has not been raised by the parties, we find that the *Imbler* standard is applicable to *Bivens* -type suits brought against United States Attorneys. *See Brawer v. Horowitz,* 535 F.2d 830, 834 (3d Cir. 1976); *see also Helstoski v. Goldstein,* 552 F.2d 564 (3d Cir. 1977); *Ostrer v. Aronwald,* 434 F.Supp. 379, 390–92 (S.D.N.Y.1977).

**2.** As the Court noted, 424 U.S. at 431 n. 33, 96 S.Ct. at 995:

> We recognize that the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom. A prosecuting attorney is required constantly, in the course of his duty as such, to make decisions on a wide variety of sensitive issues. These include questions of whether to present a case to a grand jury, whether to file an information, whether and

> when to prosecute, whether to dismiss an indictment against particular defendants, which witness to call, and what other evidence to present. Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence. At some point, and with respect to some decisions, the prosecutor no doubt functions as an administrator rather than as an officer of the court. Drawing a proper line between these functions may present difficult questions, but this case does not require us to anticipate them.

We believe that additional facts are necessary before we can determine whether defendant's conduct was "administrative" or "judicial." We do not think, however, that the mere fact that the motion for a bench warrant was made to a judge inside a courtroom establishes that it was part of the judicial phase.

fendant will file a nuisance suit and the possibility of one filed by a government witness. While there may be merit in the concern that a prosecutor will be hesitant to bring an action against a defendant for fear of being subject to civil liability, there seems to us to be little ground for believing that a prosecutor will choose his witnesses differently because of the same fear. Nor does the common law origin of prosecutorial immunity, stemming from the question of amenability to suit for malicious prosecution, have any application when the civil plaintiff is a witness rather than a defendant. We find, therefore, that *Imbler* is clearly distinguishable from the case before us and we deny the motion to dismiss.[3]

An appropriate order will enter.

---

3. Our decision at this stage of the proceedings that the absolute immunity is inapplicable does not, of course, leave Mr. Kieser defenseless, as he still has available to him the good faith defense of the qualified immunity available to public officials. See *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).