Zed **DANIELS**, Plaintiff-Appellee,

v.

Richard L. **KIESER**,
Defendant-Appellant.

No. 78–1648.

United States Court of Appeals,
Seventh Circuit.

Heard Sept. 26, 1978.

Decided Nov. 7, 1978.

---

Nancy K. Needles, Asst. U. S. Atty., Chicago, Ill., for defendant-appellant.

Terrence Hutton, Jenner & Block, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, WISDOM,* and SPRECHER, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff is a Chicago businessman whose automobile was stolen in Chicago on June 14, 1976. Blandford Phoenix, another Chicagoan, was arrested in La Porte, Indiana, in possession of the automobile. On October 20, 1976, a bench trial commenced in which the Government attempted to show that Phoenix had violated the Dyer Act (18 U.S.C. §§ 2311–2313) by the theft and interstate transportation of plaintiff's automobile.[1]

Plaintiff was served with a subpoena to appear on October 15, 1976, as a witness at Phoenix's trial in South Bend, Indiana. However, through an associate, plaintiff advised federal prosecutor Richard Kieser that he would be unable to appear on that date and on October 13 the trial was reset to October 20, 1976. The bench trial commenced on that date and the Government presented certain evidence but did not conclude its case. The trial was scheduled to resume on November 4, 1976, because plaintiff had secured a continuance until then for his appearance as a government witness. According to the complaint, plaintiff was advised by his South Bend attorney "that the case would proceed on November 4, 1976 and a new subpoena would be served" on him. Since no subpoena was served upon him, plaintiff left Chicago for Bermuda on November 3, 1976, to attend a professional association meeting. After plaintiff left his Chicago office for O'Hare airport to depart for Bermuda, a Deputy United States Marshal in Chicago telephoned plaintiff's office that he had just discovered an unserved November 4, 1976, subpoena for plaintiff's attendance at Phoenix's trial. The Deputy Marshal "explained the subpoena had been misplaced, apparently by another Deputy United States Marshal who had left on vacation without serving it." An associate of plaintiff advised the Deputy United States Marshal about plaintiff's pending departure and provided him with the flight number and date of plaintiff's expected return, which was on November 9, 1976. The Deputy Marshal said he would attempt to explain the matter to defendant and obtain a new trial date, but defendant allegedly refused to seek another continuance and told the Deputy Mar-

---

* The Honorable John Minor Wisdom, Senior Circuit Judge of the Fifth Circuit, is sitting by designation.

1. Eventually Phoenix was found not guilty of this offense by Judge Sharp who succeeded Judge Grant as the trial judge.

shal to have plaintiff in South Bend on November 4 for resumption of the trial.

On November 4, defendant appeared before Judge Grant in South Bend and told the judge that plaintiff "was attempting to evade service of the subpoena" and persuaded the court to issue a material witness arrest warrant for Daniels under 18 U.S.C. § 3149.[2] According to the complaint, the prosecutor made the following unsworn false statements (or statements in reckless disregard of the truth) in order to obtain Daniels' material witness arrest warrant from Judge Grant:

"(a) That Mr. Daniels was attempting to evade service of the subpoena;

"(b) That Mr. Daniels had previously attempted to evade service of the subpoena;

"(c) That Mr. Daniels had left town after having been notified by the United States Marshal's office that there was a subpoena for him;

"(d) That Mr. Kieser had been assured on November 3, 1976 by Thomas Shanahan, a lawyer who represented Mr. Daniels, that Mr. Daniels would be in the South Bend courtroom at 1:00 p.m. on November 4, 1976;

"(e) That Mr. Shanahan told Mr. Kieser on November 3, 1976 that Mr. Daniels was 'double-crossing' Mr. Shanahan and not keeping an agreement between Mr. Shanahan and Mr. Kieser;

"(f) And that Mr. Kieser had no idea of when Mr. Daniels would return to the United States."

On November 4, as the transcript of that date reveals, the Dyer Act defendant Phoenix was not present in court, supposedly because he thought the trial was continued until November 5, so that the trial could not have proceeded on November 4 anyway.

When plaintiff returned to O'Hare airport in Chicago on November 9, he was arrested and taken into custody in the presence of his wife, business associates and clients, and was interrogated, handcuffed and taken to the federal lockup in Chicago upon defendant's directions pursuant to the material witness arrest warrant of November 4. When plaintiff arrived at the lockup, he was fingerprinted, photographed, disrobed, searched, physically examined and imprisoned in the maximum security portion of the Federal Detention Center until a United States Magistrate released him on November 10, 1976. Plaintiff subsequently testified as a government witness when Phoenix's trial resumed in South Bend.

Plaintiff later instituted this suit against prosecutor Kieser. Count I of the complaint alleged a violation of plaintiff's rights under the Fourth and Fifth Amendments and under 18 U.S.C. § 3149. Count II was a false imprisonment count; Count III was for malicious prosecution, and Count IV was for abuse of process. In each count except Count III, plaintiff sought $100,000 in damages plus $50,000 in punitive damages and costs and reasonable attorney's fees.[3]

The Government filed a motion to dismiss on the ground that defendant was an Assistant United States Attorney for the Northern District of Indiana and as a public prosecutor was "absolutely immune from civil acts of the nature set forth in the complaint" (Record Item 3, page 3). The plaintiff insisted that in the circumstances of this case, the prosecutor had only quali-

---

2. Kieser obtained the material witness arrest warrant without the affidavit required by Section 3149 which provides as follows:

"If it appears by affidavit that the testimony of a person is material in any criminal proceeding, and if it is shown that it may become impracticable to secure his presence by subpoena, a judicial officer shall impose conditions of release pursuant to section 3146. No material witness shall be detained because of inability to comply with any con-

dition of release if the testimony of such witness can adequately be secured by deposition, and further detention is not necessary to prevent a failure of justice. Release may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure."

3. Punitive damages were not sought in Count III alleging malicious prosecution.

fied immunity.[4] Judge Will agreed with the plaintiff and filed a memorandum opinion denying defendant's motion to dismiss. *Daniels v. Kieser,* 446 F.Supp. 1160 (N.D.Ill. 1978).

The district court first noted that plaintiff brought the action under federal law and under state law pursuant to diversity jurisdiction. The court decided that the rule of *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128, which held that a state prosecutor acting within the scope of his duties in initiating and pursuing a criminal prosecution and presenting the state's case is absolutely immune to a suit for damages for alleged deprivations of the accused's constitutional rights, did not apply to this case. Judge Will noted that *Imbler* left open the question of a prosecutor's liability for actions taken in an investigative or administrative capacity. Apparently not realizing that Phoenix's trial had actually commenced on October 20 and had been interrupted only because of plaintiff's absence, he stated:

> "We are not at all certain that a request for a bench warrant at a [November 4] status hearing prior to the commencement of trial is part of the 'judicial phase of the criminal process' and we are inclined to believe that it is simply a ministerial act within the prosecutor's administrative functions." (446 F.Supp. at 1162; footnote omitted.)

That may well be true, but the Phoenix trial had commenced and defendant's action in securing plaintiff's attendance as a witness was part of the trial process. Therefore, the first underpinning of the ruling below cannot stand.[5]

The district judge also thought that absolute prosecutorial immunity should not apply when the plaintiff is not an allegedly wronged criminal defendant but is a witness for the prosecution, stating:

> "While there may be merit in the concern that a prosecutor will be hesitant to bring an action against a defendant for fear of being subject to civil liability, there seems to us to be little ground for believing that a prosecutor will choose his witnesses differently because of the same fear. Nor does the common law origin of prosecutorial immunity, stemming from the question of amenability to suit for malicious prosecution, have any application when the civil plaintiff is a witness rather than a defendant." (446 F.Supp. at 1163.)

As will be seen, this second underpinning of the district court's rationale has been rejected by the Supreme Court, leaving no foundation for the district court's well-meaning decision.

The district court concluded that defendant had available to him only the good faith defense attendant on the qualified immunity available to public officials. Pursuant to 28 U.S.C. § 1292(b), Judge Will certified as appropriate for immediate appeal the question whether in the circumstances presented the prosecutor enjoyed absolute or only

---

**4.** Absolute immunity would protect the defendant from liability for any official act regardless of whether the wrongdoing was intentional or even malicious, whereas qualified immunity would afford protection only for official actions taken in good faith. Since the plaintiff here alleges intentional deprivation of his rights and the only question presented at this stage of the proceedings is the correctness of the district court's denial of the Government's motion to dismiss, there was no opportunity to test Kieser's "good faith belief that Mr. Daniels was attempting to evade service" (March 24, 1978, Tr. 12).

**5.** We do not mean to imply that a prosecutor has absolute immunity for anything he does once the trial has begun. As will be developed *infra,* the prosecutor's immunity is absolute only when he is performing "quasi-judicial" functions. When he is acting in an administrative or investigative capacity, his immunity may be only qualified. We agree with Judge McGowan, writing for the majority in *Briggs v. Goodwin,* 186 U.S.App.D.C. 179, 569 F.2d 10, 23 (1977), cert. denied, —— U.S. ——, 98 S.Ct. 3089, 57 L.Ed.2d 1133, that

> "[T]he investigative function may embrace some acts even when performed after the commencement of judicial proceedings. Attention must be focused on the behavior itself, and not solely on its timing."

However, in making the often difficult decision as to what behavior is investigative or administrative and what is quasi-judicial, whether or not the trial has commenced may be relevant. We think it is in this case.

qualified immunity. On May 10, 1978, we granted defendant's application for an interlocutory appeal. We reverse.

The latest authoritative pronouncement on the subject of prosecutorial immunity is found in *Butz v. Economou,* —— U.S. ——, ——, 98 S.Ct. 2894, 57 L.Ed.2d 895, where the Supreme Court held that absolute prosecutorial immunity, rather than merely qualified official immunity, is extended to Executive Branch officials whose duties are prosecutorial in nature. In *Butz* the Court (unanimous in this respect) reaffirmed the holdings in *Yaselli v. Goff,* 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395, and *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128, that prosecutors have absolute immunity while "participating in the judicial process." The Court reasoned that a qualified immunity might have an adverse effect on the functioning of the criminal judicial system by discouraging the initiation of prosecutions and "by affecting the prosecutor's conduct of the trial." In *Butz,* the Court reiterated its observation in *Imbler* that

"If prosecutors were hampered in exercising their judgment *as to the use of . . . witnesses* by concern about resulting personal liability, the triers of fact in criminal cases would often be denied relevant evidence." (424 U.S. at 426, 96 S.Ct. at 993; emphasis supplied.)

As the *Butz* Court noted, in *Imbler* the Court specifically reserved the question whether absolute immunity is required "for those aspects of a prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate" (n.37, 98 S.Ct. at 2413).

█ Applying *Butz* and *Imbler* to the present case requires us to reverse because defendant was not cast in the role of an administrator or investigative officer with respect to securing Daniels' attendance at

Phoenix's trial. Here, as already noted, the October 20 trial had only been recessed so that the Government could obtain the presence of Daniels to testify about his ownership of the automobile and to produce the documents of title. As the defendant observes, since the trial had begun and Daniels' testimony was an essential element of the Government's case, jeopardy had attached and the Government's failure to prove ownership and interstate transportation of the car through Daniels' testimony and his documentary evidence might have resulted in a directed verdict without the possibility of a retrial. In seeking to guarantee Daniels' presence at the trial through the material witness warrant, defendant was attempting to prove all elements charged in the indictment. Thus *Imbler* affords him absolute immunity since the activities of defendant "were intimately associated with the judicial phase of the criminal process * * *" (424 U.S. at 430, 96 S.Ct. at 995).

To avoid *Imbler* and *Butz,* plaintiff relies heavily on *Briggs v. Goodwin,* 186 U.S.App. D.C. 179, 569 F.2d 10 (1977), cert. denied, —— U.S. ——, 98 S.Ct. 3089, 57 L.Ed.2d 1133. However, that case involved the prosecutor's alleged perjury in a grand jury investigation before an indictment had been brought. This clearly was during the investigative stage of the proceedings and thus falls within one of the possible *Imbler* exceptions. Similarly in *Hampton v. City of Chicago,* 484 F.2d 602, 609 (7th Cir. 1973), cert. denied, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471, we denied absolute immunity to a State's Attorney and his assistant where no prosecution had commenced and they were investigators acting like police officers.[6]

█ With the single exception of *Hampton,* this Circuit has consistently upheld the

---

**6.** The *Hampton* exception was recently applied in *J. D. Pflaumer Inc. v. United States Department of Justice,* 450 F.Supp. 1125 (E.D.Pa. 1978). There the prosecutor allegedly ordered certain documents seized without a warrant in violation of the plaintiff's Fourth Amendment rights and the court concluded that the prosecutor was acting in his investigative capacity, but in *Pflaumer* the alleged deprivation of constitutional rights occurred during a grand jury investigation before an indictment was even handed down. In contrast, trial had commenced in the present case and the procuring of the witness was an integral part of the Government's case.

quasi-judicial or absolute immunity of prosecutors where, as here, they were acting within the scope of their office. *Heidelberg v. Hammer,* 577 F.2d 429 (7th Cir. 1978); *Grow v. Fisher,* 523 F.2d 875, 877 (7th Cir. 1975); *Tyler v. Witkowski,* 511 F.2d 449 (7th Cir. 1975); *Littleton v. Berbling,* 468 F.2d 389 (7th Cir. 1972), reversed in part on other grounds, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674; *French v. Corrigan,* 432 F.2d 1211, 1214 (7th Cir. 1970), cert. denied, 401 U.S. 915, 91 S.Ct. 890, 27 L.Ed.2d 814;[7] *Cawley v. Warren,* 216 F.2d 74 (7th Cir. 1954). Indeed, in *Grow* we expressly refused to adopt the qualified immunity concept urged upon us here, observing that all the Circuits considering the question had adopted the absolute immunity rule. 523 F.2d at 877 n.1.[8] We are not disposed to make an exception where the civil plaintiff is a witness rather than the accused, for *Imbler* and *Butz* have at least implied that prosecutorial immunity also applies to suits by witnesses as well as by accused,[9] by focusing on whether the acts complained of were within the scope of the prosecutorial function rather than on the identity of the plaintiff. As the defendant states here, "it would be strange public policy indeed which would take away the right to sue a prosecutor from one most likely to suffer prosecutorial abuse, the criminal defendant, while giving the same right to a class of persons [witnesses] less likely to suffer prosecutorial abuse" (reply br. 9).[10]

Apart from this case, apparently only *Beaver v. Carey,* 426 F.Supp. 301 (N.D.Ill. 1977), deals with quasi-judicial immunity when the plaintiff in the civil action was a witness in the prior criminal action. In *Beaver* the plaintiffs objected, as here, to their arrest pursuant to a material witness warrant. Judge Robson held that the Louisiana public defenders who filed motions to secure the warrants and the Illinois prosecutor who presented them to the Illinois court were all acting within the scope of their official duties and were therefore fully immune. Although there are factual differences between the *Beaver* case and the present one, we agree with Judge Robson's implicit reasoning that plaintiffs who were prior witnesses are not to be treated differently on that account from those who were prior defendants.

Because defendant was attempting to secure Daniels' presence at the resumption of the trial, we must consider that he was functioning as an advocate rather than as an investigator or administrator. His conduct was of course subject to the supervision of the trial judge. If his conduct is as reprehensible as the plaintiff alleges, a criminal prosecution or disbarment might be available (see 424 U.S. at 431, 96 S.Ct. 984, n.34), but he has absolute immunity in this suit for damages.[11] Despite our natural sympathy for the plaintiff's position (but see n.4 *supra*) and the district court's desire to afford him a means of redress, there is simply no room for us to distinguish *Imbler* or *Butz.*

The order denying defendant's motion to dismiss is hereby reversed.

**7.** In *French,* the prosecutors were accorded absolute immunity even though they were accused of having conspired with others against the plaintiff.

**8.** The latest example seems to be *Perez v. Borchers,* 567 F.2d 285 (5th Cir. 1978) (*per curiam*), cert. denied, U.S. , 99 S.Ct. 109, 58 L.Ed.2d 126.

**9.** In its most recent incursion into the related subject of judicial immunity, the Supreme Court did not permit a non-accused party plaintiff to prevail. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331.

**10.** The plaintiff draws an opposite conclusion from this statement, arguing that since witnesses are less likely to sue prosecutors than are defendants, the *Imbler* Court's policy concern that prosecutors not be inhibited in performing their duties does not apply to suits by witnesses. Whether witnesses are less likely to institute such suits should not be the touchstone, for their suits would also have an inhibiting effect.

**11.** At the oral argument, plaintiff's counsel advised us that a complaint has been lodged against Kieser "high" in the Justice Department.