Mary E. BETTS

v.

**Barbara RICHARD et al.**

**Civ. No. H–81–982.**

United States District Court,
D. Connecticut.

June 2, 1983.

---

John R. Williams, New Haven, Conn., for plaintiff.

John M. Massameno, Asst., Chief State's Atty., Wallingford, Conn., Robert E. Beach, Jr., Frederick W. Danforth, Jr., Hartford, Conn., Roy L. Smith, New London, Conn., Patricia M. Strong, Asst. Atty. Gen., Hartford, Conn., for defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

In this action, the plaintiff seeks redress for asserted violations by the defendants of her rights under the Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution and under various laws of the State of Connecticut. There is presently pending before the court a motion for summary judgment (filed Sept. 21, 1982) submitted by one of the defendants, Richard Morelli.

### I.

Although certain facts are in dispute, a rough narrative of the events giving rise to this case can be easily sketched. On June 7, 1981, the plaintiff, Mary E. Betts, contacted a police officer in the Stonington Police Department, Barbara Richard, one of the defendants in this action. Apparently Betts informed Richard that Betts lived with her boyfriend, Hugh Christie, a police officer in the Town of Groton, and stated that she had just been subjected to a beating by him. Betts has not disputed that at that time she sought Christie's arrest. Thereafter, Christie was in fact arrested and charged with assault in the third degree.

Prosecution of the case was assigned to Richard Morelli, then a deputy assistant state's attorney, who, during the course of preparation for Christie's trial, issued a subpoena for Betts. On September 6, 1981,

about a month after the subpoena had issued, Betts contacted Morelli and told him she wanted to drop the charges against Christie. Morelli apparently told Betts that the charges against Christie would not be dropped and that Betts would have to testify at trial. Betts, according to Morelli, then recanted her earlier account of the alleged assault, whereupon Morelli warned her of the penalties for giving a false statement to the police. *See* Morelli's Statement of Material Facts (filed Sept. 21, 1982), at 1–2.

Trial of *State v. Christie* was supposed to start on the morning of September 18, 1981. What happened between September 6 and September 18 is a subject of some controversy. For the moment it suffices to note that, upon reflection, Morelli believes that Betts was on notice that trial of the case was imminent and sought to avoid appearing or being compelled to appear, while Betts claims that she made no effort to avoid appearance or contact with Morelli but had been informed that the trial would not begin until September 21. In any event, on Friday, September 18, the parties gathered in Connecticut Superior Court at New London to begin the Christie trial, Betts, however, being absent. Representing that she was on notice that trial was scheduled and was avoiding appearance, Morelli then requested that the trial judge issue a capias for Betts. The capias was accordingly issued. It appears from a transcript that the capias was issued almost immediately upon the calling of *State v. Christie,* well before entry of Christie's plea of not guilty or the impanelling and swearing of a petit jury. *See* Certified Transcript, *State v. Christie* (Conn.Super.Ct., G.A. 10, Sept. 18, 1981) (dated Jan. 18, 1983), at 2–3 (issuance of capias) and 11 (entry of plea and impanelling and swearing of petit jury).

On the afternoon of September 18, Mary Betts was arrested by members of the Stonington Police Department. She was thereupon incarcerated at the Niantic Correctional Institution, held there overnight, and released on bond on the evening of Saturday, September 19.

The Christie trial resumed on Monday, September 21, at which time the State began its case by calling Betts. After answering one preliminary question, Betts refused to answer further inquiries, invoking the constitutional privilege against self-incrimination. A brief colloquy among counsel and the court ensued, after which the State dropped its prosecution, and the charges against Christie were dismissed. The court thereupon discharged the jury, informing them that they had just sat on what "may very well have been the fastest trial in the history of this court or any court," Certified Transcript, *State v. Christie* (Conn.Super.Ct., G.A. 10, Sept. 21, 1981) (dated Jan. 18, 1983), at 24–25.

Thereafter, Betts filed this action against, *inter alia,* the prosecutor, Morelli, alleging violations of various federal constitutional rights, as well as state law, and seeking redress under 42 U.S.C. § 1983. Morelli has submitted a motion for summary judgment on the ground that, as a prosecutor performing a quasi-judicial function, he enjoys absolute immunity from a suit such as this one.

## II.

Though not quite as venerable as the doctrine of judicial immunity from which it derives, the concept of common-law prosecutorial immunity already had a long history before it received the imprimatur of the United States Supreme Court in *Yaselli v. Goff,* 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927). The rationale for the immunity, at least insofar as it applies in the usual context of a suit for malicious prosecution, was expressed in much-quoted words by Judge Learned Hand when he wrote that it is "in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation," *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). For the most part, common-law tort immunities are preserved under § 1983, *Scheuer v. Rhodes,* 416 U.S. 232,

243, 94 S.Ct. 1683, 1689, 40 L.Ed.2d 90 (1974), and the Supreme Court, upon its "first opportunity to address the § 1983 liability of a state prosecuting officer," *Imbler v. Pachtman,* 424 U.S. 409, 420, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1978), found that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983," *id.* at 431, 96 S.Ct. at 995 (footnote omitted). That immunity is absolute. *Id.* at 430, 96 S.Ct. at 994.

Under *Imbler,* however, absolute immunity does not attach to every action taken by a prosecutor in his or her official capacity, only to those "activities intimately associated with the judicial phase of the criminal process," *id.* The *Imbler* court did not consider the applicability of prosecutorial immunity under § 1983 to the situation in which "the prosecutor . . . functions as an administrator rather than as an officer of the court," *id.* at 431, n. 33, 96 S.Ct. at 995 n. 33. *See also Briscoe v. Lahue,* —— U.S. ——, —— n. 28, 103 S.Ct. 1108, 1119 n. 28, 75 L.Ed.2d 96 (1983).

That question has, however, been considered by various federal Courts of Appeals in the years since *Imbler.* It has generally been held that, insofar as a prosecutor acts in an administrative or investigative capacity, he or she is entitled not to absolute immunity but only to the qualified (or "good-faith") immunity that protects law enforcement personnel. *Lee v. Willins,* 617 F.2d 320, 322 (2d Cir.), *cert. denied,* 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980); *Hampton v. Hanrahan,* 600 F.2d 600, 632 (7th Cir.1979), *rev'd in part on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980); *Forsyth v. Kleindienst,* 599 F.2d 1203, 1214 (3d Cir.1979), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981); *Slavin v. Curry,* 574 F.2d 1256, 1264–1265, *modified on other grounds,* 583 F.2d 779 (5th Cir.1978). Thus, the determination of whether a prosecutor enjoys absolute immunity turns on the question of what function the prosecutor was performing at the time of the activity complained of; as the Supreme Court has

observed, "[d]rawing a proper line between these functions may present difficult questions," *Imbler v. Pachtman, supra,* 424 U.S. at 431, n. 33, 96 S.Ct. at 995, n. 33.

█ Our own Court of Appeals has adopted a particularized approach to problems of prosecutorial immunity:

> Under this analysis, a prosecutor is immune from a suit to recover for an injury arising solely from the prosecution itself—*e.g.,* being compelled to stand trial or to suffer imprisonment or pretrial detention. Such harm must always result in substantial part from the protected prosecutorial activities of initiating prosecution or presenting the state's case.
>
> Where the alleged harm is inflicted independently of the prosecution, however, absolute immunity will not attach. If, for example, a prosecutor violates the Fourth Amendment by conducting an illegal search, the victim is harmed by the invasion of his zone of privacy, whether or not the evidence unlawfully obtained is introduced at trial.

*Lee v. Willins, supra,* 617 F.2d at 322. We now turn to an application of these principles to the facts of the case at bar.

### III.

In the Memorandum of Law in Support of the Defendant Morelli's Motion for Summary Judgment (filed Sept. 21, 1982) ("Morelli Memorandum"), the argument is made that Morelli's actions respecting Betts are protected by absolute immunity under *Lee.* Morelli Memorandum, at 8. Morelli's theory is that his acts were directed toward ensuring the presence of Betts, the State's principal, if not sole, witness, at trial.

There are two difficulties with Morelli's theory. The first is that the *Lee* court specifically observed "that a prosecutor might not enjoy absolute immunity from suit by a witness who was allegedly threatened and imprisoned to obtain his perjured testimony," *Lee v. Willins, supra,* 617 F.2d at 322. It is apparent from the pleadings in this case to date that such allegations are

indeed being made by the plaintiff.[1] *See, e.g.,* Complaint (filed Dec. 22, 1981), ¶ 1, at 2.

A second difficulty arises from Morelli's reliance on *Daniels v. Kieser,* 586 F.2d 64 (7th Cir.1978), apparently the only decision by a Court of Appeals in which the question of a prosecutor's § 1983 liability to a witness has been addressed directly.[2] In *Daniels,* the plaintiff had been a complaining witness called to testify at the trial of the man charged with having stolen the plaintiff's car. On several occasions, the plaintiff sought a continuance of the trial. According to the plaintiff, a Deputy United States Marshal negligently failed to serve a subpoena upon the plaintiff, and the latter, assuming that the trial would not be going forward for some time, left on a business trip. The plaintiff alleged that the prosecutor then obtained a material witness arrest warrant based on false statements. After the plaintiff was arrested, he testified as expected for the government, then sued the prosecutor under § 1983. The district court denied the defendant's motion to dismiss, *Daniels v. Kieser,* 446 F.Supp. 1160 (N.D.Ill. 1978), but the Court of Appeals reversed. Morelli describes *Daniels* as arising in "a similar context," Morelli Memorandum, at 9, but this court is of the opinion that *Daniels* presents a case quite different from the one at bar.

One point of distinction between *Daniels* and the instant case is that in the former the criminal trial had already begun when the warrant for the plaintiff's arrest was issued, whereas in the latter the capias was issued before commencement of the trial. The significance of the distinction is twofold. In *Daniels,* the need for the material witness arrest warrant was urgent, for "jeopardy had attached and the Government's failure to prove ownership and interstate transportation of the car through Daniels' testimony and his documentary evidence might have resulted in a directed verdict without the possibility of a retrial," *Daniels v. Kieser, supra,* 586 F.2d at 68. No such exigency was present when Morelli sought the capias for Betts. Secondly, commencement of trial is important because it demarcates the point at which a prosecutor's function shifts from the investigative or administrative to the "quasi-judicial." *Id.* at 67.

Anticipating the force of this argument, Morelli has challenged the distinction of *Daniels* on this basis by stressing that "[t]he only reason why the *Christie* trial in this case had not already begun when the capias was sought was because the plaintiff was to be the principal and lead state witness," Morelli Memorandum, at 9. In short, Morelli claims that the failure of the trial to start was Betts' own fault. Of course, for purposes of deciding a motion for summary judgment, we need note only that Betts disputes the contention that it was her absence that prevented the Christie trial from starting. *See* Statement of Material Facts in Dispute (filed Feb. 15, 1982), ¶¶ 7–8, at 2. But it should also be remarked that Morelli's argument is, as it stands, a *non sequitur,* for no court has ever suggested that anything turns on the determination of *why* the prosecutor has not moved or been able to move from the administrative or investigative to the judicial phase of a criminal proceeding. The undisputed fact is that when the capias issued for Mary Betts, Hugh Christie had not yet pleaded not guilty and no jury had yet been impanelled or sworn in this case.

However, the *Daniels* court noted that the determination of whether trial had commenced was "relevant," *Daniels v. Kieser, supra,* 586 F.2d at 67, n. 5, without suggesting it was dispositive. Accordingly, another

---

**1.** This interpretation of the Complaint was specifically articulated by plaintiff's counsel at oral argument on the instant motion, in open court and on the record, on May 31, 1983.

**2.** It also appears that this issue has been presented to one district court. *Beaver v. Car-* ey, 426 F.Supp. 301 (N.D.Ill.1977). Because the *Beaver* opinion is somewhat abbreviated and because the theory of that case is elaborated in *Daniels v. Kieser,* 586 F.2d 64, 69 (7th Cir. 1978), *Beaver* is not discussed in the text of the instant opinion.

point of distinction between *Daniels* and the instant case should be mentioned.

Whatever his grievances, the *Daniels* plaintiff appears never to have alleged that the prosecutor was doing anything other than trying to ensure the plaintiff's presence at trial. The Court of Appeals was able to conclude that the sole purpose animating the prosecutor in seeking to arrest Daniels was exactly that need for Daniels' presence. The question of what Daniels would say once he took the stand was never in controversy.

■ Thus, *Daniels* does not present the issue Betts claims is before this court, which is precisely the issue reserved in *Lee v. Willins, supra,* 617 F.2d at 322. A prosecutor who is preoccupied with putting on a case may incidentally work to secure the presence of witnesses in furtherance of "present[ation of] the State's case," *Imbler v. Pachtman, supra,* 424 U.S. at 431, 96 S.Ct. at 995, and such incidental efforts will be covered by absolute immunity. It is in this context that the Supreme Court has held that prosecutors must enjoy absolute immunity " 'in exercising their judgment as to the use of . . . witnesses,' " *Butz v. Economou,* 438 U.S. 478, 510, 98 S.Ct. 2894, 2912, 57 L.Ed.2d 895 (1978), *quoting Imbler v. Pachtman, supra,* 424 U.S. at 426, 96 S.Ct. at 993. *See also Taylor v. Kavanagh,* 640 F.2d 450, 452 (2d Cir.1981) ("coercion of witnesses").[3] But it is also conceivable that a prosecutor could pursue the arrest of a witness for the purpose of compelling that witness to alter proposed testimony or to punish the witness for not giving desired testimony. In that event, whatever the

propriety of such conduct by a prosecutor, the effort expended in securing the witness's presence would be administrative or investigative, and thus subject to only qualified immunity. *Cf. Henderson v. Fisher,* 631 F.2d 1115, 1120 (3d Cir.1980) (prosecutor's actions in allowing exculpatory material to be destroyed could not be characterized as presentation of State's case).

## IV.

■ A court deciding a motion for summary judgment must "resolve all ambiguities and draw all reasonable inferences against the moving party," *American International Group, Inc. v. London American International Corp., Ltd.,* 664 F.2d 348, 351 (2d Cir.1981) (citations omitted). For summary judgment to be proper, "[n]ot only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy as to the inferences to be drawn from them," *Schwabenbauer v. Board of Education,* 667 F.2d 305, 313 (2d Cir.1981) (citations omitted). Moreover, "[i]f the party opposing summary judgment 'generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate,' " *American International Group, Inc. v. London American International Corp., Ltd., supra,* 664 F.2d at 351 (citations omitted).

■ A trier of fact could find that, in seeking issuance of the capias for Betts, it was Morelli's intention to compel her to change her testimony or punish her for not having stood by her original story. In that event, Morelli would not be entitled to absolute § 1983 immunity.[4] At present, the

---

**3.** In *Taylor v. Kavanagh,* 640 F.2d 450, 452 (2d Cir.1981), Judge Kaufman, writing for the court, briefly characterized *Lee v. Willins,* 617 F.2d 320 (2d Cir.), *cert. denied,* 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980), as standing for the proposition that absolute prosecutorial immunity attaches to the act of coercing a witness to appear at trial. Of course, *Taylor* was concerned with the nature of the prosecutor's various functions. As *Lee,* also written by Judge Kaufman, made clear, a single act taken by a prosecutor might be quasi-judicial in nature with respect to one party (*viz.,* the defendant) but administrative or investigative with respect to another (*e.g.,* a witness). Hence the

conclusion in *Lee,* already quoted *supra* and in no way undermined by *Taylor,* "that a prosecutor might not enjoy absolute immunity from suit *by a witness* who was allegedly threatened and imprisoned to obtain his perjured testimony," *Lee v. Willins, supra,* 617 F.2d at 322 (emphasis supplied).

**4.** If the trier of fact found that Morelli did not seek to compel Betts to change her testimony, Morelli would be entitled to absolute immunity. Of course, even if Morelli were found by the trier of fact to have acted in order to compel Betts to change her testimony, he would still be

plaintiff has sufficiently controverted Morelli's relevant allegations of fact to preclude entry of summary judgment on this issue. Summary judgments "are not appropriate 'where motive and intent play leading roles,'" *White Motor Co. v. United States,* 372 U.S. 253, 259, 83 S.Ct. 696, 699, 9 L.Ed.2d 738 (1963), *quoting Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). *See generally* 6 Moore's Federal Practice ¶ 56.-17[41.–1], at 56–930 to 56–932 (1982).

Accordingly, Morelli's motion for summary judgment is denied.[5]

It is so ordered.

entitled to qualified (or "good faith") immunity. Thus, if Morelli had sought to force Betts to withdraw her recantation, but he reasonably believed that her original version of the alleged incident was accurate, Morelli would still be entitled to qualified immunity (as an investigator acting in good faith), rather than absolute immunity as a prosecutor acting in a quasi-judicial capacity. In suggesting these hypothetical possibilities, the court does not, of course, intimate any view as to the truth of Betts', Morelli's, or any other party's allegations of fact.

**5.** As a practical matter, this ruling is essentially an affirmation of the court's earlier denial (filed Feb. 23, 1982) of Morelli's motion to dismiss (filed Jan. 21, 1982). However, the court welcomes this opportunity to explain in somewhat greater detail the rationale of its previous decision.