726 F.2d 79
 Mary E. BETTS, Plaintiff-Appellee,
v.
Barbara RICHARD, Individually and in her official capacity
as a Police Officer in the Police Dept. of Stonington,
Conn., Richard Morelli, Individually and in his official
capacity as a Deputy Asst. State's Attorney for the State of
Connecticut, GA 10 at New London, Officer O'Leary,
Individually and in his official capacity as a Corrections
Officer in the Dept. of Correction for the State of Conn.,
assigned to the Correctional Institution at Niantic, Marie
Cerino, Individually and in her official capacity as
Superintendent of the Conn. Correctional Institution at
Niantic, and John R. Manson, Individually and in his
official capacity as Commissioner of Correction for the
State of Connecticut, Defendants,
Richard Morelli, Defendant-Appellant.
 No. 514, Docket 83-7580.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 2, 1983.
Decided Jan. 23, 1984.
 
 John M. Massameno, Asst. State's Atty. Div. of Criminal Justice, Wallingford, Conn., for defendant-appellant.
 John R. Williams, Williams & Wise, New Haven, Conn., for plaintiff-appellee.
 Before WINTER and PRATT, Circuit Judges, and METZNER, District Judge.*
 METZNER, District Judge:
 Plaintiff, Mary E. Betts, instituted a civil rights action seeking money damages from law enforcement officers in connection with a forced appearance as a witness in a criminal prosecution. 42 U.S.C. Sec. 1983. The original defendants were a police officer, a corrections officer, the Superintendent of the Connecticut Correctional Institution at Niantic, the Commissioner of Correction in Connecticut, and the appellant, Richard Morelli, a Deputy Assistant State's Attorney for Connecticut. The litigation as to all defendants, except for Morelli, has been settled.
 Morelli contends that as a state prosecutor he has absolute immunity from liability for damages allegedly suffered by plaintiff in this case. Plaintiff was arrested pursuant to a capias obtained by Morelli from a trial judge in the Superior Court of Connecticut, to secure the presence of the plaintiff as the state's principal witness in a criminal trial. The following appears to be the chronology of events leading up to the institution of this action.
 On June 7, 1981, plaintiff made complaint to the Stonington Police Department that she had been beaten up that day by her boy friend, Hugh Christie. She gave the police a signed written statement of the episode. Christie, with whom she had been living, was a police officer in the Town of Groton. He was arrested on the basis of the complaint and charged with assault in the third degree. A subpoena was issued for the plaintiff to appear at Christie's trial on September 8, 1981. Plaintiff then informed Morelli that she did not wish to testify against her boy friend. After being told that she would have to testify, the plaintiff stated that her written statement did not recite exactly what had happened, and that she and her boy friend were back together again and she wanted to drop the charges. Plaintiff at this point claims that she said she would testify, but not in accordance with the written statement. Defendant, upon the direction of his superior, refused to drop the charges.
 It appears that the criminal trial was adjourned to Friday, September 18, 1981. On the previous day, the defendant tried to contact the plaintiff to confirm the date. He left a message at her place of employment for her to call him. Plaintiff admits receiving the message, but made no effort to return the call. Morelli also contacted plaintiff's attorney on that Thursday and informed him that the trial would start the next day, but the attorney said that he was going to a seminar and would not appear the next day with his client.
 The plaintiff failed to appear in court on Friday and a capias was issued for her arrest. After a short discussion regarding some discovery problems, the court proceeded to take the defendant's plea of not guilty to a substitute information. Previously, defendant had pled not guilty to the original information. This took a few moments. The court then proceeded to select a jury. About 4 P.M. the case was adjourned to the following Monday morning.
 In the meantime, the capias was executed with plaintiff's arrest at her home at 3:22 P.M. that Friday. Instead of being brought to court, she was taken to the Niantic Correctional Institution where she was incarcerated overnight. She was released on bond on Saturday, and on the following Monday appeared with her attorney in court.
 On Monday morning the trial proceeded and the prosecutor called plaintiff as his first witness. She promptly asserted her privilege against self-incrimination. The court sustained the claim of privilege and the prosecutor was forced to dismiss the charges against Christie.
 Plaintiff then instituted this Section 1983 action and the defendant sought summary judgment on the ground that he had absolute immunity. The court below denied the motion, 566 F.Supp. 125, holding that there was an issue as to whether the purpose for seeking the capias was to obtain perjured testimony, in which case absolute immunity did not exist. In addition, the district court was of the opinion that the request for the capias occurred before the commencement of trial which marks the shift of the prosecutor's function from investigative to "quasi-judicial."
 This is the first case in this circuit raising the question as to whether a witness in a criminal prosecution has a viable 1983 claim against the prosecutor for violation of the constitutional rights of the witness.
 The seminal case in this area of prosecutorial immunity is Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In Imbler the prosecutor was charged with having knowingly used false testimony in the criminal trial in which the plaintiff was the defendant. The Court held that the prosecutor was clothed with absolute immunity under Section 1983. The Court said:
 "To be sure, this immunity does leave the genuinely wronged defendant without civil redress against the prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system."
 
 
 1
 424 U.S. at 427-28, 96 S.Ct. at 993-94.
 
 
 2
 The Court indicated that the functional nature of the activities would determine the extent of the immunity, and said, "We hold only that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under Sec. 1983." 424 U.S. at 431, 96 S.Ct. at 995.
 
 
 3
 We have found three cases dealing with the issue before this court: Daniels v. Kieser, 586 F.2d 64 (7th Cir.1978); DeBoer v. Martin, 537 F.Supp. 1159 (N.D.Ill., E.D.1982); Beaver v. Carey, 426 F.Supp. 301 (N.D.Ill., E.D.1977). All support the finding of absolute immunity in a 1983 action.
 
 
 4
 In Daniels the court held that the issuance of a material witness warrant was an act intimately associated with the criminal process, and that an exception should not be made "where the civil plaintiff is a witness rather than the accused, for Imbler and Butz [v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) ] have at least implied that prosecutorial immunity also applies to suits by witnesses as well as by accused...." 586 F.2d at 69. One of the charges in Daniels was that the prosecutor misrepresented the facts when, in requesting the warrant, he stated that the plaintiff was attempting to evade service of process.
 
 
 5
 We see no ground for a distinction which would protect a prosecutor from liability for damages where he has obtained a conviction through subornation of perjury, but would strip him of the immunity where the person who is the object of attempted subornation seeks damages flowing from such action. The fundamental question remains the same. Did the activity occur while "acting as an advocate in a judicial proceeding ..."? Taylor v. Kavanagh, 640 F.2d 450, 452 (2d Cir.1981).
 
 
 6
 We are concerned here with the person directly responsible for the initiation of the criminal proceedings. On the trial she would have been the only witness for the prosecution as to what had actually transpired. All other testimony would be merely secondary confirmation of her testimony.
 
 
 7
 It is admitted that the plaintiff was advised on Thursday that the prosecutor had attempted to reach her at her place of employment, and that she had failed to return that call. It is not denied that the plaintiff's attorney was advised on the same day that the trial was going forward on Friday and that the attorney and his client should be in court at that time. On Friday morning at 10 A.M. the plaintiff did not appear in court. The case was called for trial and the prosecutor did not have his main witness.
 
 
 8
 The trial judge has testified that it was his intention to start hearing testimony sometime in the afternoon, assuming witnesses were available. If he had known that the State's witness was not going to be available Friday morning, he would "have had a follow-up case here if I thought there was going to be a problem with this case."
 
 
 9
 It is clear that the issuance of the capias was intimately associated with procuring the attendance of a witness for imminent trial. Absolute immunity attaches to this act, and any claimed improper motivation is irrelevant. See Green v. Maraio, 722 F.2d 1013, at 1018 (2d Cir.1983). As this court has said:
 
 
 10
 "The efficient, and just, performance of the prosecutorial function would be chilled if Government attorneys were forced to worry that their choice of trial strategy and tactics could subject them to monetary liability, or at best, the inconvenience of proving a 'good faith' defense to a Sec. 1983 action."
 
 
 11
 Taylor, 640 F.2d at 452. Trial tactics include subornation of perjury, withholding of evidence, and introduction of illegally seized evidence. Id.
 
 
 12
 The court below attempted to distinguish Daniels on the ground that in that case the warrant was issued after the commencement of the trial. However, the court did not hold this fact to be dispositive. Daniels, supra at 67 n. 5. We find it to be irrelevant in this case because of the short time frame involved. At best, only a few minutes passed between the order directing the issuance of the capias and the jury selection process. It was clearly the exigencies of the situation which called for the issuance of the capias to assure the presence of the main witness in the event the testimony was to start that day.
 
 
 13
 Order reversed and summary judgment granted to the defendant.
 
 
 
 *
 The Honorable Charles M. Metzner of the United States District Court for the Southern District of New York, sitting by designation