10-4081-cv
Flagler v. Trainor

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2011

(Argued: September 14, 2011      Decided: November 21, 2011)

Docket No. 10-4081-cv

_____

STEPHANIE FLAGLER,

*Plaintiff-Appellant,*

-v.-

MATTHEW E. TRAINOR, Assistant District Attorney, Fulton County,
New York and THE COUNTY OF FULTON, NEW YORK,

*Defendants-Appellees.*

_____

Before:
          CALABRESI, WESLEY, and LYNCH, *Circuit Judges.*

        Appeal from an order and judgment of the United States
District Court for the Northern District of New York
(McCurn, *J.*), which granted Defendants-Appellees' motion to
dismiss Plaintiff-Appellant's complaint in its entirety
based on absolute prosecutorial immunity.

        Defendants-Appellees moved the district court to
dismiss Plaintiff-Appellant's complaint pursuant to Federal
Rule of Civil Procedure 12(b)(6), arguing that Defendant-
Appellee Matthew Trainor, a Fulton County Assistant District
Attorney, was absolutely immune from Plaintiff-Appellant's

claims.[1]  We conclude that the district court correctly found Trainor absolutely immune from liability for making alleged false statements in support of a material witness order and warrant.

We also conclude, however, that the district court erred by finding Trainor absolutely immune from Plaintiff-Appellant's other claims.  Because absolute immunity only extends to conduct related to prosecutorial functions that are intimately associated with initiating or presenting the State's case, it does not immunize prosecutors from liability for: (1) making defamatory statements to the press; (2) accessing a person's voicemail without consent; or (3) persuading a party to a conversation to record its contents.  We also vacate and remand for the district court to consider in the first instance whether immunity extends to Trainor's decision to "preserve" evidence after the criminal prosecution has run its course.

We express no view as to the substantive viability of these claims.  We simply conclude that absolute immunity does not shield this conduct.

**AFFIRMED** in part, **VACATED** and **REMANDED** in part.

---

BRADFORD BENSON, The Golden Law Firm, Utica, NY, *for Plaintiff-Appellant.*

THOMAS HIGGS, Murphy, Burns, Barber & Murphy, LLP, Albany, NY, *for Defendants-Appellees.*

---

WESLEY, *Circuit Judge*:

This case requires us to revisit the purpose and scope of absolute immunity for prosecutors.

---

[1]  Flagler sued Fulton County, but has abandoned those claims.  *See Flagler v. Trainor*, No. 08-cv-138, 2010 WL 3724015, at *3 (N.D.N.Y. Sept. 15, 2010).  In addition, Flagler has clarified that she only sued Trainor in his individual capacity; she does not sue him in his official capacity.

**I.**

Plaintiff-Appellant Stephanie Flagler was a victim of domestic violence at the hands of her ex-boyfriend, Brandon Becker. A grand jury indicted Becker for a criminal matter in which Flagler was the complaining witness. Becker's trial was scheduled to begin on March 12, 2007. In the days leading up to Becker's trial, Assistant District Attorney Matthew Trainor grew concerned that Becker was encouraging Flagler to leave the state in order to avoid testifying at his trial. In addition, Trainor spoke with Becker's ex-wife, who claimed that Flagler had told her that she planned to leave the state from March 5, 2007 to March 12, 2007 and would not talk to anyone in the District Attorney's office.

**A.    Material Witness Order and Arrest Warrant.**

Trainor sought a material witness order to secure Flagler's attendance at Becker's trial pursuant to New York Criminal Procedure Law Article 620. He alleged that Flagler had quit responding to telephone calls after January 5, 2007, and that she was "avoiding service of subpoena [sic] for the upcoming trial." He also recounted for the court his conversation with Becker's ex-wife. Trainor moved for the material witness order on March 1, 2007. On the basis

3

of Trainor's affirmation, the County Court ordered Flagler to appear at a hearing on March 7, 2007 in order to determine whether she "should be adjudged a material witness."  The court also issued a material witness arrest warrant.  In doing so, the judge found "reasonable cause" to believe that Flagler "would be unlikely to respond" to the court's order voluntarily.

In her complaint, Flagler alleged that Trainor knowingly made false statements in support of the material witness order.  She claimed that while she had planned to leave for a vacation on March 8, 2007, Trainor knew that she would return on March 11, 2007, in time for Becker's trial. She asserted that despite knowing her home, work, and school addresses, Trainor made no attempt to notify her about Becker's upcoming trial or to subpoena her.  In addition, Flagler alleged that while the County Court issued the material witness arrest warrant on March 1, 2007, she was not arrested until March 7, 2007, one day *after* she called Trainor and confirmed that she would testify.

**B.    Flagler's Arrest, the Material Witness Hearing, and the Confiscation of Flagler's Cell Phone.**

Pursuant to the material witness arrest warrant, the Utica Police Department arrested Flagler at her home and

4

transported her to the Fulton County Supreme Court for the March 7, 2007 hearing.  Justice Richard T. Aulisi appointed a Fulton County Public Defender to represent Flagler at the material witness hearing.  At the hearing, Flagler told Justice Aulisi that she had been cooperative with the District Attorney's office and had never said she would not come to court.  Trainor never told Justice Aulisi about Flagler's phone call from the prior day, and despite her communications, Trainor recommended that the court remand her into custody.  After the hearing, the Fulton County Sheriff's Department took Flagler back into custody and held her overnight without bail.  She appeared before the County Court the following morning, and was  released on bail.

The Sheriff's Department confiscated Flagler's cell phone when the Department took custody of Flagler.  Flagler alleged that the Sheriff's Department gave her cell phone to Trainor and that someone in the District Attorney's office unlawfully tried to access Flagler's voicemail.  Flagler also alleged that Trainor has refused to return her cell phone, even though Becker's conviction is final.

C.    **Trainor's Other Alleged Wrongful Acts**.

Flagler also alleged that Trainor made a defamatory

statement against her by falsely proclaiming to the press that she had been "hiding out," and that Trainor persuaded Becker's ex-wife to record telephone calls with Flagler without her consent.

**D.  Procedural History.**

Trainor moved to dismiss Flagler's complaint *solely* on the basis of absolute prosecutorial immunity.  Mot. to Dismiss 1-5, *Flagler v. Trainor*, No. 08-cv-138 (N.D.N.Y. Jan. 14, 2009), ECF No. 10-7.  The District Court granted the motion, dismissing all of Flagler's federal claims and declining to consider Flagler's remaining state claims without a federal counterpart.  *Flagler*, 2010 WL 3724015, at *4-6.  Flagler filed a timely notice of appeal, and we now affirm in part and vacate and remand in part.

**II.**

**A.  Absolute Prosecutorial Immunity.**[2]

Prosecutors are generally immune from liability under 42 U.S.C. § 1983 for conduct in furtherance of prosecutorial

---

[2]  In this case, the standard of review is well known and not at issue.  "We review *de novo* a district court's grant of a motion to dismiss pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint as true and drawing all inferences in the plaintiff's favor." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 685 (2d Cir. 2001).  We will "affirm only if it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Id.* (internal quotation marks omitted) (alterations in original).

6

functions that are intimately associated with initiating or presenting the State's case. *Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976). Section 1983 immunity is grounded in the prosecutor's common law tort immunity. That immunity arises from the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* at 423. "[I]f the prosecutor could be made to answer in court each time [an aggrieved defendant] charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law." *Id.* at 425. Immunity protects the proper functioning of the prosecutor's office by insulating the exercise of prosecutorial discretion. *Kalina v. Fletcher*, 522 U.S. 118, 125 (1997).

Yet absolute prosecutorial immunity is not without its costs. In *Imbler*, the Supreme Court explained:

> To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the

7

vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system.

424 U.S. at 427-28; *see also Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949). Thus, while absolute prosecutorial immunity may leave an injured party without a remedy, society has found more benefit in insulating the exercise of prosecutorial discretion.

That being said, the Supreme Court has clarified that immunity is not a function of the prosecutor's *title*. *Kalina*, 522 U.S. at 125, 127. Rather, it attaches to prosecutorial functions that are intimately associated with initiating or presenting the State's case. *Id.* Prosecutors are absolutely immune from suit only when acting as advocates and when their conduct involves the exercise of discretion. *Id.* at 127. Thus, the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing,[3] in initiating a prosecution,[4] and in presenting the State's case.[5] On the other hand, the Court has withheld absolute immunity for

---

[3]  *Burns v. Reed*, 500 U.S. 478, 492 (1991).

[4]  *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).

[5]  *Id.*

8

conduct unrelated to advocacy, such as giving legal advice,[6] holding a press conference,[7] or acting as a complaining witness.[8]

The task then is to determine whether each asserted wrongful act falls within the zone of Trainor's absolute immunity as a prosecutor.

### 1. False Statements Made in Support of a Material Witness Order.

Flagler contends that by making sworn factual statements in support of the order, Trainor was acting as a complaining witness rather than as an advocate. In *Kalina v. Fletcher*, the Supreme Court held that a prosecutor was not absolutely immune from liability for making false statements in support of an arrest warrant. There, the prosecutor provided a "Certification for Determination of Probable Cause" that summarized the evidence supporting the arrest warrant. 522 U.S. at 121. Rather than attaching to the motion an affidavit from a witness with personal knowledge of facts, the prosecutor "personally vouched for the truth of the facts set forth in the certification." *Id.*

---

[6] *Burns*, 500 U.S. at 492-96.

[7] *Buckley v. Fitzsimmons*, 509 U.S. 259, 276-78 (1993).

[8] *Kalina v. Fletcher*, 522 U.S. 118, 129-31 (1997).

9

The certification included two inaccurate factual statements, *id.;* the charges against the defendant were eventually dismissed, *id.* at 122. The former defendant sued the prosecutor under Section 1983 "based on [the prosecutor's] alleged violation of his constitutional right to be free from unreasonable seizures." *Id.* The prosecutor moved for summary judgment based on absolute prosecutorial immunity. The district court denied immunity and both the Ninth Circuit and Supreme Court affirmed. *Id.* at 122-23.

After surveying the history of prosecutorial immunity, the Supreme Court recognized immunity's two important functions: (1) "protecting the prosecutor from harassing litigation that would divert [the prosecutor's] time and attention from his official duties"; and (2) "the interest in enabling [the prosecutor] to exercise independent judgment when deciding which suits to bring and in conducting them in court." *Id.* at 125 (internal quotation omitted). The Court recognized that the second function—insulating the prosecutor's discretion when acting as advocate—was of "primary importance." *Id.* But sworn statements in support of an arrest warrant were not

intimately associated with a prosecutor's duty to advocate.[9] Rather, offering sworn statements was an "act that any competent witness might have performed."  *Id.* at 129-30. The prosecutor was acting as a complaining witness, not as an advocate; "[t]estifying about facts is the function of the witness, not of the lawyer."  *Id.* at 130.  The Court also noted that "neither federal nor state law made it necessary for the prosecutor to make [the factual assertion]."  *Id.* at 129.

*Kalina* is easily distinguishable from the case before us.  There are key differences between arrest warrants and material witness orders.  For one, in New York, only a prosecutor or defense attorney can seek a material witness order.  N.Y. Crim. Proc. Law § 620.20(1); *see also* N.Y. Crim. Proc. Law § 620.30(1) (requiring the "applicant" to make a written, sworn application in order to commence material witness proceedings; the applicant is either the prosecutor or defense attorney).  Further, an arrest warrant is one of the first steps required to begin a criminal

---

[9]  The Court held that preparing and drafting of the certification was protected by absolute immunity because it was intimately associated with a prosecutors's advocacy.  It was only the act of "personally attesting to the truth of the averments" that went beyond the prosecutor's duty to advocate.  *Kalina*, 522 U.S. at 129.

11

investigation.  A material witness order, in contrast, may issue only when a prosecution is ready for trial.

Seeking a material witness order is within the prosecutor's "function" as an advocate.  A prosecutor employs prosecutorial discretion when determining whether to seek such an order.  *See Betts v. Richard*, 726 F.2d 79, 79 (2d Cir. 1984)[10]; *Daniels v. Kieser*, 586 F.2d 64, 69 (7th Cir. 1978).  It is an act "intimately associated" with presenting the State's case.  The material witness order ensures the attendance of a "material" witness at trial, which often makes or breaks the prosecutor's case.

Nevertheless, Flagler argues that the Third and Ninth Circuits have denied absolute prosecutorial immunity for

---

[10]  In *Betts v. Richard*, 726 F.2d 79 (2d Cir. 1983), we held that a prosecutor who had obtained a writ of capias (essentially the Connecticut equivalent of a material witness warrant) to ensure the presence of the complaining witness at a criminal trial was immune from liability under § 1983.  It is arguable that *Betts* is controlling authority in this circuit, subject only to whether *Kalina* abrogates its precedential force.  Because we believe that absolute immunity applies even on the analysis set forth in *Kalina*, and would reach the same result even if *Betts* had never been decided, we do not need to decide whether *Kalina* sets forth a sufficiently novel analysis to require us to rethink the *Betts* precedent.  *See Union of Needletrades, Indus. & Textile Employees v. INS*, 336 F.3d 200, 210 (2d Cir. 2003) (setting forth the standard for when we may disregard circuit authority in light of intervening Supreme Court precedent).  It follows from our analysis that while the *Betts* court did not have the benefit of *Kalina*, and applied a somewhat different framework derived from earlier cases, its result would survive any rethinking that *Kalina* might require.

12

wrongdoing in connection with prosecutorial functions. Flagler, however, fails to recognize that the wrongdoing in those cases was either administrative in nature[11] or akin to the function of law enforcement officers in protecting the public safety by making a complaint of wrongdoing.[12] Therefore, notwithstanding Flagler's arguments to the contrary, we find Trainor absolutely immune for making alleged false statements in support of a material witness order and warrant.

### 2. Alleged Defamatory Statements Made to the Press.

Flagler argues that Trainor defamed her by falsely

---

[11] *Odd v. Malone*, 538 F.3d 202, 213, 215-16 (3d Cir. 2008). In *Odd*, the Third Circuit held that keeping the court informed about the status of a criminal proceeding (which could affect a material witness's continued detention) was an administrative task. The court recognized, however, that *securing* a material witness's attendance at trial was shielded by absolute immunity. *Id.* at 212. That is the case before us; Flagler challenges Trainor's conduct that was intimately associated with his securing her attendance at trial as a material witness.

[12] In *Cruz v. Kauai County*, the Ninth Circuit denied absolute immunity because the prosecutor's conduct—swearing to facts in support of a bail revocation—was akin to conduct of a complaining witness, even though Hawaii law restricted authority to seek bail revocation to a prosecutor. 279 F.3d 1064, 1067-68 (9th Cir. 2002). We recognize that our holding may be in tension with *Cruz*. In *Cruz*, however, the district court granted only *qualified* immunity, so the Ninth Circuit's discussion about *absolute* immunity is largely dicta. And, we believe that in seeking a material witness warrant, despite signing an affidavit, the prosecutor is intimately involved in advocacy—assembling and presenting the State's case.

13

stating to the press that she had been "hiding out" before the trial. Trainor *only* claimed absolute immunity from liability for this claim; he did not challenge the substance of the pleading.

In *Buckley v. Fitzsimmons*, the Supreme Court held that "statements to the media are not entitled to absolute immunity." 509 U.S. 259, 277 (1993). The Court explained that while absolute immunity shields statements made during a judicial proceeding, it does not shield statements made outside court. *Id.* The Court reasoned: "The conduct of a press conference does not involve the initiation of a prosecution, the presentation of the State's case in court, or actions preparatory for these functions." *Id.* at 278. The Court recognized that while statements to the press may be an "integral part" of the prosecutor's job, the duty is no different than that for other executives who deal with the press and enjoy only *qualified* immunity. *Id.* Because absolute immunity does not shield statements made to the press, the district court erred by dismissing Flagler's defamation claim on account of absolute immunity.

14

### 3. **Alleged Accessing of a Person's Voicemail without Consent and Persuading Becker's Ex-Wife to Record Telephone Calls.**

We have no trouble concluding that Trainor is not absolutely immune from allegedly accessing, or ordering someone to access, Flagler's voicemail without her consent, or from persuading Becker's ex-wife to record telephone calls with Flagler.[13] The alleged misconduct is akin to investigatory acts, and absolute immunity does not shield investigatory acts. *See, e.g.*, *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009); *Imbler*, 424 U.S. at 430; *Pierson v. Ray*, 386 U.S. 547, 557 (1967). As a result, the district court erred by dismissing Flagler's claims on this ground.

### 4. **Alleged Withholding/Preserving of Evidence After a Criminal Prosecution Has Run its Course.**

Trainor argues that by withholding Flagler's cell phone, he is preserving evidence and that preservation of evidence is intimately associated with presenting the State's case. In *Parkinson v. Cozzolino*, we held that a prosecutor is absolutely immune for withholding/preserving

---

[13] We take no position on whether these acts occurred or whether they would constitute actionable misconduct if they did. In general, so long as one party to a conversation consents to its recording, the recording is lawful under both New York and federal law. *See* N.Y. Crim. Proc. Law § 700.05; N.Y. Penal Law § 250.00; *United States v. White*, 401 U.S. 745 (1971).

15

evidence to be used in connection with a criminal prosecution, and that immunity extends throughout a subsequent appeal. 238 F.3d 145, 152 (2d Cir. 2001). We made no determination, however, "as to when such immunity ends." *Id.*

We recognize the inherent conflict between Flagler's argument and a prosecutor's duty to defend a conviction. If we agreed with Flagler, absolute immunity would end once the time to appeal and collaterally attack a conviction had run. But some collateral attacks, like actual innocence, have no statute of limitations. And as technology advances, we learn of new tests and tools that make fact finding more precise - technologies once thought inconceivable. Therefore, without fuller development of the issue by thoughtful briefing and factual development in the district court, we are unwilling to draw a line as to how long absolute immunity shields a prosecutor for withholding/preserving evidence.

Rather, we recognize that Trainor did not raise *Cozzolino* below. We therefore vacate and remand the district court's order and judgment so it may consider whether Trainor is absolutely immune for preserving

16

evidence—Flagler's cell phone—after Becker's conviction became final.  Of course, the district court need not address this issue if it deems summary judgment appropriate on the basis of qualified immunity.

**III.**

We **AFFIRM** the district court to the extent it found Trainor absolutely immune from Flagler's claim that he violated her constitutional rights by making false statements in support of a material witness order.  We **VACATE** and **REMAND** the rest of the order and judgment because absolute immunity does not immunize prosecutors from liability for making defamatory statements to the press, accessing a person's voicemail without consent, or persuading a party to a conversation to record its contents; and, the district court should consider in the first instance whether Trainor is absolutely immune for continuing to withhold/preserve evidence—Flagler's cell phone.

17

CALABRESI, *Circuit Judge*, concurring:

I agree completely with the majority opinion and join it fully.  I write separately because our Court has recently decided *Collazo v. Pagano*, 656 F.3d 131 (2d Cir. 2011) (another opinion with which I agree completely), whose relation to this case is, I think, worth underscoring.

In *Collazo*, we held that claims dismissed on the ground of absolute prosecutorial immunity are considered "frivolous" for purposes of 28 U.S.C. § 1915(g), the "three-strikes" provision.[1]  *Id.* at 134.  We expressly limited our holding to cases in the "readily distinguishable heartland of immune prosecutorial conduct that [is] . . . 'intimately associated with the judicial phase of

---

[1]  Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

the criminal process.'"  *Id.* n.2 (citing *Burns v. Reed*, 500

U.S. 478, 486 (1991)).  We also excluded "cases in which the

complaint is not dismissed *sua sponte* pursuant to 28 U.S.C.

§ 1915(g)."  *Id.*

I write to clarify the following.  A court may dismiss

a claim *sua sponte* on three grounds pursuant to 28 U.S.C.

§ 1915(e)(2)(B): If the action is frivolous or malicious,

fails to state a claim on which relief may be granted, or

seeks monetary relief from a defendant who is immune.[2]  The

last of these grounds, immunity, would be a basis for

dismissal under § 1915(e)(2) even if the claim in the

complaint were a serious one and anything but easy.  In

other words, if a dismissal occurred pursuant to

§ 1915(e)(2) on absolute immunity grounds, it could not,

without more, be per se frivolous for purposes of the

--------

[2]  The criteria for accumulating strikes under § 1915(g)
track only two of the three grounds for dismissal under
§ 1915(e)(2)(B).  They do not include immunity.  See 28
U.S.C. § 1915(g).  Nonetheless, we have held that under
certain circumstances, a district court making the
"three-strikes" determination under § 1915(g) may deem a
prior dismissal on account of immunity as frivolous.
*Collazo*, 656 F.3d at 134, *Mills v. Fischer*, 645 F.3d 176,
177 (2d Cir. 2011).

2

three-strikes determination under § 1915(g).  Conversely, § 1915(g)-the basis for dismissal expressly mentioned in *Collazo*-applies only where the district court finds that a prisoner previously has brought three or more frivolous lawsuits.  This means that a dismissal citing § 1915(g) must necessarily entail a finding, whether implicit or explicit, that at least three former claims were frivolous.  And a dismissal based on immunity will not be frivolous unless the district court making the § 1915(g) determination deems the former case to fall within the "distinguishable heartland of immune prosecutorial conduct."  *Collazo*, 656 F.3d at 134 n.2.

The case before us is a perfect example of a claim of absolute immunity that, though it loses (I of course refer to the portion of our opinion affirming the district court's dismissal), is anything but frivolous. Plaintiff-Appellant's claim that absolute immunity does not apply, relies, *inter alia*, on the Ninth Circuit opinion in *Cruz v. Kauai Cnty.*, 279 F.3d 1064 (9th Cir. 2002), and, as our opinion points out, our decision, whether or not in conflict with *Cruz*, is at least in tension with it.  To

3

suggest, as Appellant does, that *Cruz* should guide us, is not frivolous and is not made frivolous by the fact that we rejected the suggestion.

The difference between a dismissal on absolute immunity grounds pursuant to § 1915(e)(2)(iii), and a dismissal as the Court in *Collazo* required, pursuant to § 1915(g), is crucial. The first necessarily allows a claimant to assert that the claim was not frivolous in the circumstances of that case, and, hence, does not justify a strike for the purposes of the three-strikes finding. The second, as *Collazo* held, forecloses that argument.

4