21-549
*Norales v. Acevedo*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of December, two thousand twenty-two.

PRESENT:   Amalya L. Kearse,
             Robert D. Sack,
             Steven J. Menashi,
                   *Circuit Judges.*

_____

JAMES NORALES,

        *Plaintiff-Appellant,*

    v.                                                          No. 21-549

DETECTIVE WILFREDO ACEVEDO (N.Y.P.D.), SHIELD #6499, DETECTIVE KENNETH FAULKNER (N.Y.P.D.), SHIELD #4612, ASSISTANT DISTRICT ATTORNEY REBECCA DUNNAN, JOHN/JANE DOE POLICE OFFICERS AND PROSECUTORS #1-10

(THE NAME(S) JOHN/JANE DOE BEING FICTITIOUS AS THE REAL NAME(S) ARE PRESENTLY UNKNOWN),

*Defendants-Appellees*.

_____

| | |
|---|---|
| *For Plaintiff-Appellant*: | ANDREW L. HOFFMAN, Law Office of Andrew L. Hoffman, PC, New York, NY. |
| *For Defendants-Appellees*: | LORENZO DI SILVIO (Richard P. Dearing, Scott Shorr, *on the brief*), *for* Georgia M. Pestana, Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellees Acevedo and Faulkner*. |
| | NOREEN STACKHOUSE (Susan Roque, *on the brief*), Assistant District Attorneys, *for* Cyrus R. Vance, Jr., District Attorney of New York County, New York, NY, *for Defendant-Appellee Dunnan*. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Cote, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

James Norales appeals from a judgment of the U.S. District Court for the Southern District of New York dismissing claims he asserted against law enforcement officials under 42 U.S.C. § 1983. Section 1983 provides a cause of action when a person, "under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the

2

United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

In August 2016, someone shot a man in upper Manhattan. The police arrested Norales after an eyewitness to the shooting identified Norales as the gunman. The eyewitness, "D.T.," had known Norales since he was a boy. D.T., however, had been intoxicated on drugs at the time of the shooting and had initially denied recognizing the shooter. Nevertheless, the police ultimately obtained D.T.'s identification of Norales as the shooter after she was arrested for an unrelated narcotics offense. A prosecutor then secured D.T.'s testimony against Norales at trial in exchange for a plea agreement on the narcotics charges. Norales was arrested and tried, but the jury acquitted him.

Norales claimed that the police and the prosecution violated his constitutional rights. He sued local officials under Section 1983, alleging false arrest, malicious prosecution, and related claims. The district court dismissed Norales's claims.

We conclude that the district court did not err in dismissing Norales's claims, and we affirm the judgment of the district court. We assume the parties' familiarity with the underlying facts and procedural history.

**I**

"We review a district court's grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021) (internal quotation marks omitted). We review a district court's decision not to convert a motion to dismiss to a motion for summary judgment for abuse of discretion. *See, e.g.*, *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 67-68 (2d Cir. 2014); *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998).

Norales first argues that the district court erred in considering certain evidence—the surveillance video of the shooting, a proffer agreement between the prosecution and D.T., and parts of D.T.'s trial testimony—when it dismissed his complaint. Norales contends that consideration of these materials was improper at the motion-to-dismiss stage. He insists that the district court, after considering

materials outside of his complaint, should have converted the law enforcement officials' motions to dismiss into motions for summary judgment. We disagree.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "We have recognized, however, that in some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). Such "[a] document is integral to the complaint where the complaint relies heavily upon its terms and effect." *Id.* (internal quotation marks omitted). Courts may also properly consider "[p]ublic records" not appended to a complaint when resolving a motion to dismiss. *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

The district court's consideration of the surveillance video, the proffer agreement, and D.T.'s trial testimony was not erroneous. The district court properly stated the "integral to the complaint" standard and determined that the surveillance video, the proffer agreement, and D.T.'s trial testimony fell into that category. Key allegations in the complaint rested on the content of the surveillance video, the proffer agreement, and D.T.'s trial testimony.

As to the surveillance video, Norales alleged that while the "video showing the assault in its entirety was obtained and viewed by [Defendant-Appellee Detective Wilfredo] Acevedo and his team on the morning of the shooting, … the poor quality of the video made it not good enough for facial recognition." J. App'x 32 (internal quotation marks omitted). He further alleged that "[t]he only thing that the team could glean from the video was that the shooter was a black male who was 6'2 wearing all black thin build short hair," *id.* (internal quotation marks omitted), but "Defendants knew Norales was far shorter than 6'2, making it impossible for him to have been the shooter observed in the video," *id.* at 34.

As to the proffer agreement, Norales alleged that a "coercive deal" was consummated on February 21, 2017—the same date as the proffer agreement was signed. *Id.* at 38. This "coercive deal," according to the amended complaint,

4

explained the "coercive and tainted nature of D.T.'s alleged identification of Norales." *Id.* at 46.

As to the trial testimony, Norales alleged that "D.T. completely unraveled on the stand, unable to sustain the false narrative she had adopted in exchange for her freedom and other benefits." *Id.* at 40. The complaint made additional allegations about other admissions that D.T. made at trial.

The video, the agreement, and the testimony were integral to the allegations in the complaint. Norales claimed that the law enforcement defendants undermined the fairness of his trial by coercing his identification as a suspect from an unreliable witness. The district court determined that the materials illustrating that identification and its use at trial could be considered to determine whether Norales plausibly stated a claim for relief. We cannot say that the district court abused its discretion by doing so rather than converting the motion to dismiss into one for summary judgment.

## II

Norales also argues that the district court made improper factual findings at the motion-to-dismiss stage. Appellant's Br. 32, 38, 41. We disagree.

The district court did not fail to accept the facts in Norales's complaint as true or to draw reasonable inferences in his favor. The district court did examine the surveillance video, the proffer agreement, and D.T.'s trial testimony in making some of its factual findings, but the conclusions it drew from those materials were fairly ascertained at the motion-to-dismiss stage—as explained above. Norales concedes that he did not object to the district court's consideration of the preliminary investigative worksheet or the criminal complaint. The district court properly considered these materials, which were either integral to the complaint or part of the public record. Furthermore, Norales's contention with respect to the D.T. identification is not about factfinding; rather, Norales's argument on this point is that because there was a gap of time between D.T.'s identification and his arrest, the identification could not have established probable cause for his arrest. But we see no way in which the delay in effectuating Norales's arrest affects the probable cause initially established by D.T.'s identification of Norales. For these reasons, we cannot agree that the district court made erroneous factual findings in this case.

## III

Norales next objects to the district court's dismissal of his claims against Assistant District Attorney Rebecca Dunnan based on absolute prosecutorial immunity. When a prosecutor performs the functions of initiating a prosecution and presenting evidence, she cannot be held liable for performing a law enforcement function. *See Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976); *see also Flagler v. Trainor*, 663 F.3d 543, 546 (2d Cir. 2011) ("Prosecutors are generally immune from liability under 42 U.S.C. § 1983 for conduct in furtherance of prosecutorial functions that are intimately associated with initiating or presenting the State's case."). The immunity also covers the prosecutor's advocacy and exercise of prosecutorial discretion. *Flagler*, 663 F.3d at 547.

Norales alleges that Dunnan violated his constitutional rights when she questioned D.T. and when she drafted the criminal complaint. But interviewing potential witnesses, conducting proffer sessions, and drafting criminal complaints are prosecutorial functions to which absolute immunity applies. *See generally Flagler*, 663 F.3d at 547 ("[T]he Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case.") (footnotes omitted). Dunnan acted within the scope of her authority as a prosecutor when she performed the acts about which Norales complains. The district court correctly dismissed these claims.

## IV

We now turn to Norales's claims against the detectives. Norales argues that the district court erred in dismissing his claims against the detectives for (1) false arrest, (2) malicious prosecution, and (3) denial of his right to a fair trial. We disagree. The district court correctly dismissed the claims against the detectives for false arrest and malicious prosecution because there was sufficient probable cause to initiate investigation and arrest. The district court correctly dismissed the denial of a fair trial claim because Norales could not show that the detectives proximately caused the denial of his rights. We examine each claim in turn.

6

## A

A plaintiff must plausibly allege four elements to state a claim for malicious prosecution under Section 1983: "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003).

Accordingly, law enforcement officers have a complete defense against a malicious prosecution claim if they had probable cause to initiate the proceedings. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). If a grand jury indicted the plaintiff of the crime for which he was eventually acquitted, we presume there was probable cause. *Id*. The presumption can be rebutted only with evidence that the indictment was procured through serious police misconduct such as perjury or the suppression of evidence. *Id*. In the presence of a grand jury indictment, the burden falls on the defendant to show that, despite the indictment, probable cause did not exist. *Id*. at 73.

In this case, a grand jury indicted Norales. Norales faces the burden of overcoming the presumption of probable cause. Norales insists that probable cause did not exist because D.T.'s drug addiction and mental health struggles undermined her reliability as a witness.

Yet probable cause does not require absolute certainty about a witness's testimony. Here, there was reason to credit D.T.'s identification of Norales as the shooter. It is undisputed that D.T. was close enough to the shooting to identify the perpetrator. The detectives' pursuit of D.T.'s testimony—as the only identifiable witness to the shooting who was not the victim himself—did not amount to misconduct. D.T. eventually identified Norales—whom she had known since he was a child—as the shooter. D.T.'s eyewitness account of the shooting and her familiarity with the suspect could lead a "reasonably prudent person" to credit her identification of Norales. *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). Norales's malicious prosecution claim was properly dismissed.

Norales's false arrest claim was properly dismissed for similar reasons. To state a claim for false arrest, a plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the

7

plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (alteration omitted) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003)).

The existence of probable cause is a complete defense to such a claim for false arrest. *Id*. Probable cause exists for an arrest when law enforcement officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). The inquiry focuses on the facts immediately available to an officer at the time of arrest. *Ashley*, 992 F.3d at 136.

Here, the detectives had probable cause to arrest Norales. Norales was arrested after D.T., an eyewitness to the shooting, identified him as the shooter. For the reasons identified above, that identification was credible enough to make an arrest.

**B**

Norales claimed that the detectives' conduct denied him his right to a fair trial. He alleged that the detectives offered D.T. immunity from prosecution for unrelated crimes and money through the Crime Stoppers program to elicit false testimony at trial. He also argued that the detectives' actions undermined the reliability of the government's criminal complaint, especially the assertion that the surveillance video was the source of the identification of Norales as the lead suspect.

We recently held that a fair trial claim was sufficiently pleaded to survive a motion to dismiss even when there was probable cause to arrest a suspect and to prosecute the case. In *Frost v. New York City Police Department*, a former criminal defendant brought a Section 1983 action against law enforcement officers after he was acquitted by a jury in a trial for murder. 980 F.3d 231 (2d Cir. 2020).

In that case, a witness to the murder was arrested for an unrelated crime and sought a cooperation agreement in exchange for information about the murder. *Id*. at 238. The witness identified Frost as the killer. *Id*. at 239. Based on this identification, and on corroboration from a second witness, the police arrested

Frost. *Id*. Frost was acquitted after a jury trial, and he brought Section 1983 claims against the law enforcement officers. *Id*. at 240. Frost submitted a declaration from the first witness in which that witness declared that he had "falsely identified Frost in 2011 because he was facing a felony charge, and [the defendants] made clear … that he would need to identify Frost as the shooter in order to get a deal." *Id*.

We held that the district court erred in failing to credit the witness's declaration that he had falsely identified Frost. *Id.* at 248. We noted that although there was sufficient probable cause to arrest Frost, there was a triable issue of fact as to whether the police had *coerced* the witness into falsely accusing Frost of the crime. *Id*. at 247-48.

In this case, by contrast, Norales has not alleged sufficient facts to establish that the detectives coerced D.T. to testify falsely rather than to give testimony she believed to be truthful—or that D.T. herself ever said her identification of Norales was false or coerced. On the contrary, D.T. testified that she had truthfully and voluntarily identified Norales—whom she had known since he was a boy—as the shooter. Although the amended complaint alleges that at trial D.T. "admitted that she didn't know who shot M.G., stating unequivocally: 'Up to this day I still say I don't know,'" J. App'x 40, the trial transcript—which the district court properly consulted—is to the contrary. While there were inconsistencies in D.T.'s narrative, the transcript does not reflect the quotation that the amended complaint attributed to her. If there were any testimony from D.T. of that sort, it could not have been unequivocal, given that D.T. repeatedly stated that Norales (whom she knew as "Ty" or "Tyson") was the shooter. *See, e.g.*, J. App'x 218 ("Q. … did you see who was shooting? A. Yes. Q. And who did you see shooting? A. Ty. …. Q. Do you recognize Ty in the courtroom?" D.T. "point[ed]," and the state court noted that she had thereby "identified" Norales); *id*. at 226 ("Q. … when … you saw who was shooting, did you recognize him, at that moment? A. Yes. Q. And who was that? A. Ty."); *id*. at 243-44 ("Q. So you've told us that it was Tyson who did the shooting, right? A. Yes. …. Q. You're saying that to this jury, right? A. Oh, yeah. … Q. …. You said this to the police in October of 2016? A. Exactly. Q. As a matter of fact, on October 27th that was the first time you ever said it to the police, right? A. Yes. I came and volunteered."); *id*. at 226 ("I just came here to tell the truth.").

Norales's allegations fall short of plausibly alleging a denial of fair trial claim. Norales must show that "a defendant knowingly fabricated evidence" and

that "a reasonable jury could so find." *Morse v. Fusto*, 804 F.3d 538, 550 (2d Cir. 2015). Norales offered the allegations (1) that D.T. was offered leniency if she testified, (2) that D.T. was threatened with arrest if she did not testify, and (3) that Acevedo incorrectly stated that the surveillance video showed Norales shooting the victim. But these allegations do not establish that the defendants fabricated evidence or that a reasonable jury could so find.

Norales also cannot establish that the detectives' actions caused a deprivation of his rights. As the district court explained, D.T.'s testimony was elicited after several interviews with the district attorney's office. Dunnan, while aware of D.T.'s mental health and drug addiction issues, independently decided to press charges against Norales as the lead suspect. Her independent decision to charge Norales means that the detectives' conduct did not cause him to be subject to trial.

## C

Norales argues that the detectives still may be held liable for conspiracy to violate his constitutional rights and failure to intervene to protect those rights. We disagree. Norales's conspiracy claim was properly dismissed because he did not allege an agreement between the detectives to violate his rights and because he did not plausibly allege that those rights were violated. He cannot maintain a claim for failure to intervene because he has not plausibly alleged that any of the detectives would reasonably have believed that Norales's rights were being violated in their presence by other law enforcement officers. *See O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988).

\* \* \*

We have considered Norales's remaining arguments, which we conclude are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10